

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00956-CV

**IN THE INTEREST OF E.S.P., C.S.P., AND U.A.S.P.**, Children

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00931
Honorable Raul Perales, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: April 17, 2024

AFFIRMED

Mother and Father appeal the trial court's order terminating their parental rights to their children, E.S.P. (born 2020), C.S.P. (born 2020), and U.A.S.P. (born 2022).[1] Mother argues (1) the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(D) and (E); (2) the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children; and (3) the trial court abused its discretion in making its conservatorship determination. Father argues (1) the evidence is legally and factually insufficient to support the trial court's findings under Texas Family Code section 161.001(b)(1)(D) and (E); and (2) the evidence is legally and

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their foster parents; we refer to their biological parents as Mother and Father. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

factually insufficient to support the trial court's finding that termination is in the best interest of the children. We affirm.

## BACKGROUND

On June 9, 2022, the Texas Department of Family and Protective Services (the "Department") filed its original petition to terminate Mother and Father's parental rights to the children. As a condition of reunification, the Department created family service plans requiring Mother and Father to, inter alia, obtain appropriate housing and legal and appropriate employment; complete parenting classes and psychological evaluations; participate in individual counseling sessions; submit to a drug and alcohol assessment and follow recommendations; and submit to random drug testing. The Department ultimately pursued termination of Mother and Father's parental rights.

On August 15, 2023, September 14, 2023, and October 23, 2023, the trial court held a three-day bench trial. The trial court heard testimony from five witnesses: (1) Mother; (2) Father; (3) U.A.S.P.'s foster parent, J.B.; (4) E.S.P. and C.S.P.'s foster parent, O.A.; and (5) the Department's caseworker, Karina Espinoza. At the conclusion of trial, the court signed an order terminating Mother and Father's parental rights pursuant to section 161.001(b)(1)(D), (E), (N), (O), and (P) and made findings that termination of Mother and Father's parental rights was in the best interest of the children. Mother and Father appealed.

## ANALYSIS

Mother and Father both challenge the legal and factual sufficiency of the evidence supporting the trial court's findings under section 161.001(b)(1)(D) and (E); and the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of the children. Mother additionally challenges the trial court's conservatorship determination.

***Standard of Review***

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department has the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother and Father's parental rights and that termination was in the best interest of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened

burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Statutory Termination Grounds*

#### *Applicable Law*

In Mother's first argument and Father's first and second argument on appeal, Mother and Father challenge the legal and factual sufficiency of the evidence to support the trial court's predicate finding under subsections (D) and (E). When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.).

In general, assuming a best interest finding, only one predicate ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). To be successful on appeal, an appellant must challenge all the predicate grounds upon which a trial court based its termination order. *In re S.J.R.-Z.*, 537 S.W.3d at 682. When an appellant does not challenge all the grounds that may support an order of termination, we typically do not address the sufficiency of the evidence of any of the predicate grounds for termination. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. Instead, we must accept the validity of the unchallenged grounds and affirm the termination order. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682.

However, because termination under subsection 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, appellate courts are instructed to address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019). Therefore, we will consider Mother and Father's sufficiency argument as to subsections (D) and (E) even though they do not challenge termination under subsections (N) (constructive abandonment of child in Department conservatorship for not less than six months), (O) (failure to comply with the provisions of a court-ordered service plan), and (P) (use of a controlled substance in a manner that endangers health or safety of the child). *See In re L.C.*, No. 12-19-00137-CV, 2019 WL 4727826, at *2 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.) (addressing parents' sufficiency challenges to subsections (D) and (E) even though they did not challenge all grounds upon which termination could be supported).

Subsection (D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the

child." TEX. FAM. CODE § 161.001(b)(1)(D). Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Environment" refers to the acceptability of the child's living conditions and a parent's conduct in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id*. A parent does not need to know for certain that the child is in an endangering environment. *In re R.S.-T.*, 522 S.W.3d at 109. Awareness of a potential for danger is sufficient. *Id.* The relevant period for review of environment supporting termination under subsection (D) is before the Department removes the child. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Subsection (E) allows a trial court to terminate a parent's rights if it finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court determines whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125. "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after the child was

removed from a parent's care. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4–5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

*Application*

Mother and Father argue, rather than being the source of endangerment, they brought E.S.P. and C.S.P. to the United States to seek better medical care for them after the children were born blind. They assert dire conditions in Mexico led to the children's fragility and malnourishment and are the reason they sought asylum in the United States.

The trial court considered the following evidence relevant to its determinations under subsections (D) and (E): E.S.P. faced significant cognitive delays: at 21 months of age, he was nonverbal, non-mobile, and unable to acknowledge the nurses who spoke to him in Spanish. C.S.P. likewise faced significant cognitive delays: at 21 months of age, he was nonverbal, non-mobile, and his only form of communication was crying. At the outset of the case, Mother had significant untreated mental health needs and tested positive for methamphetamines.

Mother and Father arrived in the United States a few days before U.A.S.P.'s birth. After U.A.S.P.'s birth, Mother tested positive for methamphetamines, continued to breastfeed U.A.S.P. while testing positive for methamphetamines, and attempted suicide, leading to her emergency detention. During the course of the proceedings, Mother and Father tested positive for controlled substances as follows:

- On March 15, 2023, March 21, 2023, and April 12, 2023, Mother tested positive for amphetamines and methamphetamines via hair follicle and urine samples;

- On July 17, 2023, Mother tested positive for methamphetamines via urine sample and amphetamines and methamphetamines via hair follicle sample;

- On July 17, 2023, Father tested positive for amphetamines and methamphetamines via hair follicle and urine samples; and

- On the first day of trial, August 15, 2023, Mother was nineteen weeks pregnant with a fourth child—therefore, testing positive during her pregnancy.

Nevertheless, Mother and Father consistently denied any drug use at all stages of the proceeding and in their sworn testimony at trial and refused treatment for drug use. An unresolved history of drug abuse exposes the children to danger, potentially destabilizes the home, and exposes children to physical and emotional harm. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8. Moreover, Mother failed to attend thirty-one drug tests required by the Department, and Father failed to attend thirty-six drug tests required by the Department. The trial court could have inferred from Mother and Father's failures to submit to court ordered drug testing that they were using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs.").

In addition to continued illegal drug abuse, Mother and Father failed to attend inpatient treatment and drug therapy (as recommended by their drug assessments) and failed to complete psychological evaluations. *See In re A.L.S.*, 660 S.W.3d 257, 273 (Tex. App.—San Antonio 2022, pet. denied) (finding endangerment, in part, because appellant did not finish the service-plan mandated counseling and continued to use drugs in violation of the service plan).

One of the foster parents, O.A., testified to an incident where Mother and Father attempted to abscond with E.S.P. and C.S.P. during a visitation. While waiting in the car, O.A. witnessed Mother and Father running out of the visitation with E.S.P. and C.S.P., followed by the caseworker. Mother and Father attempted to board a nearby bus with the children. Police arrived to secure the Department's possession of the children; however, one of the children was injured during a struggle between police and the parents. The trial court could have believed the parents' conduct in attempting to flee with the children while they were legally in the Department's care created a potential for danger disregarded by the parents—a potential that manifested in physical injury to one of the children. *See In re S.M.L.*, 171 S.W.3d at 477.

After reviewing the evidence under the appropriate standards of review, we conclude that a factfinder could reasonably have formed a firm belief or conviction that Mother and Father knowingly allowed the children to remain in conditions or surroundings and engaged in conduct (e.g., prolonged illegal drug use, including during Mother's pregnancy with U.A.S.P. and her unborn child) which endangers the physical or emotional well-being of the children. Moreover, we must accept the validity of the unchallenged grounds under subsections (N), (O), and (P) and affirm the termination order on those predicate grounds. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. We overrule Mother's first issue and Father's first and second issues.

### *Best Interest*

#### *Applicable Law*

Next, Mother and Father challenge the legal sufficiency of the trial court's order that termination of their parental rights was in the best interest of the children. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[2] for courts to

---

[2] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use, which can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8. In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

---

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

*Application*

In Mother's second issue and Father's third issue on appeal, Mother and Father challenge the legal and factual sufficiency of the evidence to support the trial court's best interest finding.

*Desires of the Children*

At the time of trial, the children—aged three, three, and one—were too young to express their desires. However, the trial court could have considered that the children were bonded with the foster families, are well-cared for by them, and have spent minimal time with their biological parents. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied).

U.A.S.P.'s foster parent, J.B., testified that he has been the foster parent since U.A.S.P. was approximately two months old. He testified to her developmental difficulties at the time she entered his care but stated that U.A.S.P. is doing well and that she attends physical therapy to catch up on where she needs to be for her age. He stated he was willing to adopt U.A.S.P. and believed he could meet all her physical and emotional needs.

E.S.P. and C.S.P.'s foster parent, O.A., testified that she had been their foster parent for over a year by the final day of trial. When they first came into her care, they were very fragile, severely malnourished, and required a special formula to get their weight up. While in her care, they have received intensive sleeping, psychological, physical, and occupational therapy. They see a physical therapist and occupational therapist twice per week. While in O.A.'s care, they have increased their weight and are "really thriving." They also underwent surgeries for their eyes (to address cataracts and retina damage) and ears (tubes) while in O.A.'s care. She stated she is willing to adopt E.S.P. and C.S.P.

The trial court could have weighed this factor in favor of termination.

*Emotional and Physical Needs and Emotional and Physical Danger to the Children*

Mother and Father's extensive unresolved history of drug use, detailed above, exposes the children to danger, potentially destabilizes the home, and exposes children to physical and emotional harm. *See, e.g., In re K.J.G.*, 2019 WL 3937278, at *8. Moreover, the children have extensive medical and developmental needs beyond normal children. The trial court could have believed Mother and Father are unable to meet the children's extensive physical needs based on (1) the parent's historical inability to meet their needs, (2) their failure to demonstrate a departure from the status quo by attending court-ordered services, (3) their transience, (4) their lack of transportation required to take the children to appointments, and (5) their demonstrated failure to attend visitation with the children—including scheduled electronic visitations. The trial court could have weighed this factor in favor of termination.

*Mother and Father's Parental Abilities*

In addition to prolonged drug abuse, testimony elicited at trial exposed Mother and Father's lack of parental abilities. Although they were almost two years old at the time of their removal, E.S.P. and C.S.P. could not crawl when they were removed. U.A.S.P. was deemed "failure to thrive" after she was removed and had to be placed on a special formula to gain weight; notably, Mother breastfed U.A.S.P. during the time she tested positive for methamphetamines. Mother and Father also only attended 17 of 35 scheduled virtual visits with their children. The Department caseworker, Espinoza, testified the parents provided no excuse for most of the missed visits. The trial court could have weighed this factor in favor of termination.

*Programs Available to Promote the Best Interest of the Children*

Espinoza testified the parents completed therapy and a drug assessment. Although the drug assessment recommended they complete inpatient treatment and drug therapy, the parents refused because they consistently asserted they did not use drugs and therefore did not require treatment.

Nevertheless, as discussed above, the parents repeatedly failed to report for drug tests and tested positive for methamphetamines on every drug test that they submitted to. Although the parents were successfully discharged from therapy, the therapist stated the discharge was done because he could not help them until they acknowledged their drug use. They also failed to complete psychological assessments, despite the Department scheduling assessments for them on four occasions.

The trial court could have believed Mother and Father were unwilling or unable to successfully complete programs available to them, and it consequently could have weighed this factor in favor of termination.

*Mother and Father's Plans for the Children*

Although Father did not testify to specific plans for the children, Mother testified that she intended to settle down in San Antonio and secure services to meet the children's physical needs. However, the trial court could have considered: (1) Mother's testimony that she and Father lived with another family while residing in Houston; (2) Mother's testimony that they were looking for a place to live in San Antonio but were unable to secure one by the time of trial; (3) Espinoza's testimony that Mother and Father were transient; (4) Father's testimony that the parents could not work because of their immigration status; (5) Mother and Father's lack of transportation; and (6) the children's significant medical needs requiring multiple visits with professionals each week. The trial court could have rationally concluded Mother and Father did not have a viable plan to take care of the children and weighed this factor in favor of termination.

*Stability of Home or Proposed Placement*

For all the reasons outlined, the trial court could have believed Mother and Father could not provide a safe and stable home for the children. In contrast, the trial court considered evidence that the children's foster families provided safe and stable homes that have allowed the children to

thrive notwithstanding their significant developmental delays and medical issues. The trial court could have weighed this factor in favor of termination.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother and Father's parental rights were in the best interest of the children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Mother and Father's arguments to the contrary.

### *Conservatorship*

In Mother's third issue on appeal, Mother challenges the trial court's conservatorship determination on the basis that conservatorship should be reconsidered where a trial court's termination order is reversed on appeal. But because this argument requires Mother to prevail on one of her other two issues, and because we have overruled those issues, we overrule her final issue.

### CONCLUSION

Based on the foregoing, we affirm the trial court's order of termination.

Lori I. Valenzuela, Justice